# EXHIBIT 1

**BYRNES O'HERN & HEUGLE, LLC**
Sean F. Byrnes, Esq. (Attorney No. 032921992)
28 Leroy Place
Red Bank, New Jersey 07701
Telephone: (732) 219-7711
Facsimile: (732) 219-7733
Email: sbyrnes@byrnesohern.com
*Attorneys for Plaintiff, Wagner Holding Corp.*
*d/b/a The Blue Rock Café*

|  |  |
|---|---|
| WAGNER HOLDING CORP. d/b/a THE BLUE ROCK CAFE, <br><br> Plaintiff, <br><br> vs. <br><br> INVISION FUNDING, LLC d/b/a ARCA FUNDING, KAPITUS SERVICING, INC., JOHN DOES 1-10, and ABC CORPS. 1-10. <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> MONMOUTH COUNTY <br><br> DOCKET NO.: MON-L- <br><br> Civil Action <br><br> **COMPLAINT** |

Plaintiff, Wagner Holding Corp. d/b/a/ The Blue Rock Café ("Blue Rock"), by way of Complaint against the Defendants Invision Funding, LLC, Kapitus Servicing, Inc., John Does 1-10, and ABC Corps. 1-10 say:

## BACKGROUND

1. Plaintiff Blue Rock is a New Jersey corporation with an address at 522 Amboy Road, Keyport, NJ, 07735.

2. Blue Rock owns and operates a restaurant in Keyport, New Jersey.

3. Upon information and belief, Defendant Invision Funding, LLC d/b/a Arca Funding ("Arca") is a Virginia limited liability company with an address at 2500 Wilson Boulevard, Suite 350, Arlington, VA, 22201.

4.      Upon information and belief, Defendant Kapitus Servicing, Inc. ("Kapitus") is a Texas corporation with an address at 211 E. 7th Street, Suite 620, Austin, TX, 78701.

5.      Arca is in the business of providing loans and/or financing to businesses, including restaurants, in New Jersey as well as other states.

6.      Kapitus is in the business of servicing loans for commercial lenders.

7.      Defendants John Does 1-10 are fictitious persons meant to represent any additional persons that have been involved in the conduct that gives rise to this Complaint but are heretofore unknown to Plaintiff. As these Defendants are identified, Plaintiff shall amend the Complaint to include them.

8.      Defendants ABC Corps. 1-10 are fictitious entities meant to represent any additional entities that have been involved in the conduct that gives rise to this Complaint but are heretofore unknown to Plaintiff. As these Defendants are identified, Plaintiff shall amend the Complaint to include them.

## FACTS COMMON TO ALL COUNTS

9.      Like many restaurants on the Jersey Shore, Blue Rock suffered damage during Hurricane Sandy.

10.     After Hurricane Sandy, Blue Rock was approached by Tony Marino, who told Blue Rock he worked for a financial company that could help businesses like Blue Rock that had been devastated by the hurricane.

11.     Tony Morino offered what he described as a "cash advance," a loan where Blue Rock would borrow a sum of money that would be repaid with interest through the collection of a percentage of Blue Rock's credit card revenues.

2

12. Upon information and belief, Tony Morino was acting as an agent and/or representative of the Defendant(s) when he approached Blue Rock.

13. Upon information and belief, Tony Morino was acting as an agent and/or representative of the Defendant(s) when he offered Blue Rock the "cash advance" deal.

14. Blue Rock entered into a relationship with Arca whereby Arca would provide loans to Blue Rock that the restaurant would pay out of its weekly revenues.

15. Defendant(s) informed Blue Rock that it would take a security interest in Blue Rock's accounts to ensure repayment of the loan.

16. As a restaurant, Blue Rock does not have accounts receivable like other commercial entities.

17. Instead, Blue Rock generates revenue through individual customer transactions that occur on a nightly basis.

18. In particular, Blue Rock collects significant sums of money through credit card transactions.

19. Therefore, Arca's proposed security interest would be an interest in revenues yet to be generated by Blue Rock.

20. These loans and their concomitant collections were serviced by an entity called Strategic Funding, which later changed its name to Kapitus Servicing, Inc.

21. The servicing entity withdrew a specified percentage from the account to which Blue Rock's credit card sales were paid.

3

22.     As the relationship continued, whenever Blue Rock had almost paid back a given loan, Tony Morino would call William Parker, owner of Blue Rock, and tell him that he "qualified" for another "cash advance" because he had paid off enough of the loan.

23.     Upon information and belief, Tony Morino would make these calls to Blue Rock when Blue Rock had paid back roughly seventy percent of the preceding loan.

24.     Between August 5, 2014, the date of the first loan or "cash advance," to April 2, 2018, Blue Rock entered into eleven loan or "cash advance" arrangements with Defendant(s).

25.     On August 5, 2014, Blue Rock entered into a loan for $41,670.00, comprised of $310.00 in fees, $30,000.00 in proceeds to Blue Rock, and $11,670.00 in interest. This resulted in an effective interest rate of 38.90%.

26.     On December 9, 2014, Blue Rock entered into a loan for $70,950.00 comprised of $310.00 in fees, $50,000.00 in proceeds to Blue Rock, and $20,950 in interest. This resulted in an effective interest rate of 41.90%.

27.     On December 11, 2014, Blue Rock entered into a loan for $100,611.92 comprised of $610.00 in fees, $68,331.92 in proceeds to Blue Rock, and $32,280.00 in interest. This resulted in an effective interest rate of 47.24%.

28.     On July 9, 2015, Blue Rock entered into a loan for $120,000.00 comprised of $810.00 in fees, $87,495.53 in proceeds to Blue Rock, and $32,504.47.00 in interest. This resulted in an effective interest rate of 37.15%.

29.    On November 3, 2015, Blue Rock entered into a loan for $103,861.83 comprised of $810.00 in fees, $61,861.83 in proceeds to Blue Rock, and $42,000.00 in interest. This resulted in an effective interest rate of 67.89%.

30.    On February 22, 2016, Blue Rock entered into a loan for $39,000.00 comprised of $410.00 in fees, $30,000.00 in proceeds to Blue Rock, and $9,000.00 in interest. This resulted in an effective interest rate of 30.00%.

31.    On August 29, 2016, Blue Rock entered into a loan for $189,791.50 comprised of $810.00 in fees, $135,391.50 in proceeds to Blue Rock, and $54,440.00 in interest. This resulted in an effective interest rate of 40.21%.

32.    On November 23, 2016, Blue Rock entered into a loan for $70,000.00 comprised of $805.00 in fees, $50,000.00 in proceeds to Blue Rock, and $20,000.00 in interest. This resulted in an effective interest rate of 40.00%.

33.    On May 8, 2017, Blue Rock entered into a loan for $152,249.42, comprised of $830.00 in fees, $85,119.42 in proceeds to Blue Rock, and $67,130 in interest. This resulted in an effective interest rate of 78.87%.

34.    On December 5, 2017, Blue Rock entered into a loan for $140,196.76 comprised of $1,570.00 in fees, $92,146.76 in proceeds to Blue Rock, and $48,050.00 in interest. This resulted in an effective interest rate of 52.15%.

35.    On April 2, 2018, Blue Rock entered into a loan for $48,615.00 comprised of $400.00 in fees, $35,000.00 in proceeds to Blue Rock, and $16,615.00 in interest. This resulted in an effective interest rate of 38.90%.

5

36.     Defendant(s) concealed the true interest rates being applied to the "cash advance" loans by omitting the true effective interest rate from the written agreement.

37.     Instead, Defendant(s) styled the full loan amount(s) as a "Receipts Purchased Amount" for Blue Rock's accounts receivable, though as a restaurant Blue Rock does not have any accounts receivable but operates instead through daily credit card transactions.

38.     In or around October of 2018, Tony Morino, representative of Defendant(s), approached Blue Rock to offer the restaurant another large commercial loan, a "cash advance" of approximately $75,000 ("Loan 1").

39.     Arca ultimately issued Blue Rock Loan 1 on October 24, 2018, in the amount of $107,581.97, comprised of $1,986.32 in fees, $77,452.82 in proceeds to Blue Rock, and $30,129.15 in interest. This resulted in an effective interest rate of 38.90%.

40.     Arca and Kapitus thereafter started collecting the monies allegedly due under the loan directly out of Blue Rock's credit card transactions.

41.     Defendant(s) then approached Blue Rock again through Tony Morino to offer another loan of roughly seventy-five thousand ($75,000) ("Loan 2").

42.     Relying on the promises of Defendant(s) that the loan would be for roughly $75,000.00, Blue Rock agreed to take Loan 2.

43.     Blue Rock understood that it would only be charged interest on the monies it was borrowing at the time, the proceeds of Loan 2.

44.     At the time Loan 2 was issued, Blue Rock had paid down the balance of Loan 1 such that there was only a balance of seventy thousand, six hundred and ninety-five dollars and forty-five cents remaining ($70,695.45).

6

45.    However, much to Blue Rock's surprise, the balance from Loan 1 was added to the new amount borrowed for Loan 2.

46.    Arca and Kapitus thereafter charged the full amount of interest for Loan 2 on both the remaining balance from Loan 1 as well as the newly borrowed funds such that Blue Rock's alleged new principal balance due was two hundred and eight thousand, one hundred and one dollars and forty-eight cents ($208,101.48).

47.    Arca and Kapitus thereby charged interest twice on Loan 1.

48.    Arca and Kapitus thereby greatly increased the amount of interest that would be due under Loan 2.

49.    Arca and Kapitus thereby charged Blue Rock approximately sixty-two thousand, four hundred and six dollars and three cents ($58,101.48) in interest and fees on Loan 2, which was for $79,304.55.

50.    Acra and Kapitus thereby charged Blue Rock an approximate interest rate of 73.26% on Loan 2.

51.    Arca and Kapitus thereby charged Blue Rock an interest rate well above that which was disclosed to Blue Rock.

52.    Arca and Kapitus thereby charged Blue Rock an interest rate well above that which was contained in the agreements for Loans 1 and 2.

53.    Arca and Kapitus have continued to collect the monies allegedly due on the new loan balance directly from Blue Rock's credit card revenues.

54.    Moreover, Blue Rock only agreed to pay eight percent (8%) of its credit card revenue to Defendant(s) for Loan 1.

55. Blue Rock agreed to pay fifteen percent (15%) of its credit card revenue to Defendant(s) for Loan 2.

56. When Defendant(s) combined the balance remaining due for Loan 1 with the new balance for Loan 2, they started collecting the balances for both loans at fifteen percent (15%) of Blue Rock's credit card revenues.

57. This almost doubled the percentage that Blue Rock had been told would be collected from its credit card receipts for Loan 1.

58. Blue Rock only discovered Defendant(s) double-dipping interest scheme when it retained a new accountant, who informed Blue Rock that Defendant(s) were charging interest twice on the same loan balances.

59. Upon information and belief, this had been Defendant(s) practice from the very first loan offered to Blue Rock by Tony Morino.

60. Upon information and belief, this has been Defendant(s) practice with respect to loans offered to other residents of New Jersey.

61. Blue Rock has attempted through counsel to rectify the grave situation and has informed Arca and Kapitus that the interest charged on Loan 2 greatly exceeded the agreed-upon amount.

62. Arca and Kapitus have refused to adjust the balance allegedly due.

63. Arca and Kapitus have continued to collect the monies allegedly due directly from Blue Rock's credit card revenues despite being informed that the interest rate exceeded the agreed-upon amount and violated New Jersey law.

64. New Jersey statutes protect consumers against usurious interest rates.

8

65.     N.J.S.A. 31:1-1(a) forbids charging an interest rate greater than 16% per year.

66.     Upon information and belief, the conduct of Arca and Kapitus with respect to the loans issued to Blue Rock violates the above-referenced New Jersey statute.

## COUNT ONE

## VIOLATION OF THE NEW JERSEY
## CONSUMER FRAUD ACT

67.     Blue Rock repeats and realleges the allegations in the preceding paragraphs as if set forth fully herein.

68.     The Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2 prohibits:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing [] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…

69.     The CFA defines "merchandise" as including "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

70.     Arca and Kapitus' conduct in violation of the CFA includes, but is not limited to, the following false promises, knowing omissions of material fact, and/or misrepresentations:

    a.  Misrepresenting the interest rate that would be charged on Loan 1;

    b.  Misrepresenting the interest rate that would be charged on Loan 2;

9

c.  Misrepresenting the percentage that would be taken of Blue Rock's credit card receipts for Loan 1;

d.  Misrepresenting the interest rate(s) that would be charged on the other 11 loans taken out by Blue Rock;

e.  Omitting any reference to Defendant(s) policy of charging interest again on any balance remaining due when a new loan is issued;

f.  Misrepresenting the manner in which interest would be charged, including but not limited to misrepresenting the connection between the balance allegedly remaining due on Loan 1 and the proposed Loan 2;

g.  Misrepresenting the true interest rate for the loans while obtaining a security interest in Blue Rock's accounts.

71.    Upon information and belief, Arca and Kapitus engage in these practices when doing business with other consumers in this State.

72.    Upon information and belief, these are regular business practices of Arca and Kapitus.

73.    Arca and Kapitus' conduct in violation of the CFA includes, but is not limited to, the following knowing omissions of material fact:

a.  Failing to inform Blue Rock of the true interest rate for Loan 1;

b.  Failing to inform Blue Rock of the true interest rate for Loan 2;

c.  Failing to inform Blue Rock that the alleged unpaid balance for the Loan 1 would be subject to additional interest if Blue Rock entered into Loan 2;

10

   d. Failing to inform Blue Rock that the balances for both loans would be added together into a single allegedly unpaid principal.

74. Upon information and belief, Arca and Kapitus engage in these practices when doing business with other consumers in this State.

75. Upon information and belief, these are regular business practices of Arca and Kapitus.

76. When advertising commercial loans and related services in New Jersey, Arca has engaged in unconscionable commercial practices including, but not limited to, the following:

   a. Misrepresenting interest rates to potential New Jersey customers to induce them into loan agreements;

   b. Offering second loans to New Jersey customers who carried balances due with Arca and/or Kapitus and concealing the fact that Arca and Kapitus would charge interest again on the balance already due if the customer entered into a new loan arrangement;

   c. Misrepresenting and/or concealing true interest rates in loans to secure security interests in the accounts of New Jersey consumers;

   d. Charging interest in excess of the permissible rate under New Jersey law;

77. Kapitus's conduct in violation of the CFA includes, but is not limited to, the following knowing omissions of material fact:

   a. Failing to inform consumers of the true interest rates for the underlying loans while obtaining security interests in New Jersey consumer's accounts;

11

b. Obtaining security interest(s) in customer accounts to effectuate collection of excessive interest rates and/or collection of interest rates above those disclosed to customers;

c. Collecting excessive interest rates;

d. Collective interest rates above those disclosed to customers.

78.    Arca and Kapitus' conduct in violation of the CFA includes, but is not limited to, the following unconscionable business practices:

a. Continuing to distribute, advertise, and/or sell commercial loans to consumers with interest rates well above those disclosed to potential or existing customers;

b. Continuing to charge interest again on previous loan balances for customers who opt to take out a second loan;

c. Continuing to service and collect monies allegedly due on commercial loans from consumers with interest rates well above those disclosed to potential or existing customers;

d. Continuing to exercise security interests and thereby collect monies allegedly due on commercial loans from consumers with interest rates well above those disclosed to potential or existing customers;

79.    Each false promise, misrepresentation, unconscionable commercial practice, and/or knowing omission of material fact constitutes a separate violation of the CFA, N.J.S.A. 56:8-2.

80.     Blue Rock relied on the misrepresentations of Arca and Kapitus when it decided to take out Loan 1.

81.     Blue Rock relied on the misrepresentations of Arca and Kapitus when it decided to take out Loan 2.

82.     Blue Rock also relied on the advertisements of Arca as to financial viability of the proposed loan arrangements.

83.     Blue Rock also relied on the written agreements of Arca and Kapitus to form a belief as to the financial viability of the proposed loan arrangements.

84.     Moreover, had Arca or Kapitus informed Blue Rock of the true interest rate that would be charged, Blue Rock would not have taken out either Loan 1 or Loan 2.

85.     Furthermore, had Arca or Kapitus disclosed the fact that they would charge interest a second time on the balance allegedly remaining due under the first loan if Blue Rock entered into a second loan agreement, Blue Rock would not have entered into the second loan agreement.

86.     Had Arca or Kapitus disclosed that the remaining balance for Loan 1 would be collected from 15% of Blue Rock's credit card receipts instead of the agreed-upon 8%, Blue Rock would never have entered into either loan agreement.

87.     Blue Rock relied on the statements of the Arca and Kapitus to enter into the loan arrangements.

88.     Blue Rock also relied on the statements of Arca and Kapitus to enter into the security interest agreement.

89. As a result of the unconscionable business practices of Arca and Kapitus, Blue Rock suffered an ascertainable loss.

90. As a result of the knowing omissions of Arca and Kapitus, Blue Rock suffered an ascertainable loss.

91. As a result of the misrepresentations of Arca and Kapitus, Blue Rock suffered an ascertainable loss.

92. Blue Rock has continued to lose monies as Arca and Kapitus withdraw funds from its revenues through the security interest they obtained from Blue Rock.

93. Blue Rock has continued to suffer losses as the collection efforts of Arca and Kapitus have deprived Blue Rock of revenues due to Blue Rock.

94. Blue Rock has continued to suffer losses as Arca and Kapitus pursue collection efforts on an interest rate well above that which was disclosed to Blue Rock.

95. Arca and Kapitus's collection efforts have also damaged Blue Rock's ability to function as a restaurant.

96. Blue Rock has been deprived of necessary revenues to pay its staff, to purchase goods, and to maintain its premises.

97. Blue Rock has paid $13,431.32 in fees to date to Arca and Kapitus.

98. Blue Rock owed $440,118.52 in interest to date for the loans with Arca and Kapitus.

99. Blue Rock has paid these fees and interest out of its credit card payments.

**WHEREFORE,** Blue Rock demands judgment against Defendants for the following relief:

    a.  Compensatory Damages;

    b.  Treble Damages;

    c.  Punitive and Exemplary Damages;

    d.  Attorney's fees, interest and costs; and

    e.  Such other relief as is deemed equitable and just.

## <u>COUNT TWO</u>

### <u>FRAUD</u>

100.   Blue Rock repeats and realleges the allegations set forth in the preceding paragraphs as they are more fully set forth herein.

101.   Prior to execution of the Loan 2 agreement, Defendants made false and misleading statements to Blue Rock, which Blue Rock reasonably relied upon, that the stated interest rate would be the true interest rate for the subject loan.

102.   Defendants also made false and misleading statements to Blue Rock that the interest would be charged only on the Loan 2 balance, which Blue Rock also reasonably relied upon.

103.   Defendants intentionally misrepresented the interest rate for Loan 2 and concealed the fact that interest would be charged on the alleged balance from Loan 1 for a second time because they sought to profit off of the security interest they had obtained in Blue Rock's accounts.

104.    Had Defendants been truthful and disclosed the true interest rate of Loan 2 and the fact that interest would be charged on the alleged balance from Loan 1 for a second time, they knew full well that Blue Rock or any prospective interested party would never have agreed to enter into the loan agreement.

105.    In fact, the true interest rate for the subject loan and the fact that interest would be charged on the alleged balance from Loan 1 for a second time made the loan arrangement a terrible financial decision for a restaurant like Blue Rock.

106.    In making the false and misleading statements to Blue Rock, the Defendants fraudulently Blue Rock into executing the subject loan agreement.

107.    But for the false and misleading statements of Defendants, Blue Rock would not have agreed to enter into the second loan agreement.

108.    Defendants should not be rewarded for fraudulently inducing Blue Rock to enter into the subject loan agreement.

109.    Defendants are experienced commercial lending entities who knew full well that the picture they painted with respect to Loan 2 were false and misleading and purposely designed to mislead Blue Rock into believing that the second loan would be a financially viable option for the restaurant.

110.    As a result of Blue Rock's reliance on these false and misleading statements and/or knowing omissions of Defendants, Blue Rock has suffered damages.

111.    Blue Rock has lost revenues rightly due to it through Defendants' security interest in its revenues.

16

112.    Defendants have continued to collect monies allegedly due on a balance that far exceeds any amount disclosed to Blue Rock.

113.    Defendants have continued to collect monies allegedly due after charging interest a second time on the alleged balance from Loan 1.

114.    Blue Rock has lost revenues and thereby lost its ability to pay its staff, to maintain its premises, and to purchase goods.

**WHEREFORE,** Blue Rock demands judgment against Defendants for the following relief:

        a.    Punitive damages;

        b.    Compensatory damages;

        c.    Attorney's fees, interest and costs; and

        d.    Such other and further relief as the court deems just and equitable.

## COUNT THREE

## NEGLIGENT MISREPRESENTATION

115.    Blue Rocks repeats and realleges the allegations set forth in the preceding paragraphs as they are more fully set forth herein.

116.    Defendants knowingly and or/negligently made certain promises and representations of a past or existing fact to Blue Rock and its representatives with an understanding and intent that they would rely upon those promises and representations to its detriment.

117.    The statements and promises made by Defendants were incorrect and/or negligently made and justifiably relied upon by Blue Rock.

17

118.   Defendants knew that these promises and representations were false and misleading when made.

119.   Blue Rock did, in fact, reasonably rely upon the promises and representations made by Defendants to its substantial detriment.

120.   As a result of that reliance, Blue Rock has been harmed, and will be further harmed if compelled to pay the balance allegedly remaining due to the Defendants.

**WHEREFORE**, Blue Rock demands judgment against Defendants for the following relief:

a.   Reliance damages;

b.   Compensatory damages;

c.   Attorney's fees, interest and costs; and

d.   Such other and further relief as the court deems just and equitable.

## COUNT FOUR

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

121.   Blue Rock repeats and realleges the allegations set forth in the preceding paragraphs as they are more fully set forth herein.

122.   Blue Rock and Defendants entered into the two loan agreements and the security interest agreement as set forth herein.

123.   The Defendants breached their duty of good faith and fair dealing by continuing to lead the Plaintiff to believe that the interest rate contained in the written agreement for the second loan would be the true interest rate charged.

124.   The Defendants made these assertions and representations despite knowing that true interest rate would greatly exceed the stated rate of fifteen percent (15%).

125.   The Defendants also breached their duty of good faith by failing to disclose to Blue Rock that the balance allegedly due on Loan 1 would also be charged interest for a second time if Blue Rock entered into Loan 2.

126.   The Defendants also breached their duty of good faith and fair dealing by charging an interest rate well above that contained in the written agreement.

127.   The Defendants also breached their duty of good faith and fair dealing by collecting monies allegedly due from Blue Rock's revenues at a rate well above that disclosed in the written agreement.

128.   The Defendants also breached their duty of good faith and fair dealing by charging interest for a second time on the balance allegedly remaining due under the first loan.

129.   Defendants' actions in this regarding have deprived Blue Rock of the promised and anticipated fruits of the loan agreements, and a result Plaintiff has been damaged.

**WHEREFORE**, Blue Rock demands judgment against Defendants for the following relief:

    a.   Compensatory damages;

    b.   Attorney's fees, interest and costs; and

    c.   Such other and further relief as the court deems just and equitable.

## COUNT FOUR

## BREACH OF CONTRACT

130.   Blue Rock repeats and realleges the allegations set forth in the preceding paragraphs as they are more fully set forth herein.

131.   Blue Rock and Defendants entered into the two loan agreements and the security interest agreement as set forth herein.

132.   The agreement for Loan 1 declared a Receipts Purchased Price, or total loan amount, of $107,581.97.

133.   When Defendant(s) charged interest on the balance remaining due for Loan 1 a second time during the execution of Loan 2, Defendant(s) violated the terms of Loan 1 by increasing the Receipts Purchased Price.

134.   Moreover, the agreement for Loan 1 declared that Defendant(s) would collect only 8% of Blue Rock's credit card revenues to pay the balance of Loan 1.

135.   When Defendant(s) combined the remaining Loan 1 balance with the new balance for Loan 2, they collected both balances from Blue Rock's credit card revenues at a rate of 15%.

136.   This almost doubled the agreed-upon collection rate for Loan 1.

137.   This violated the clear terms of the Loan 1 agreement.

138.   This violated the clear terms of the security agreement the parties executed alongside the Loan 1 agreement.

139.   Defendants thereby breached the Agreement for Loan 1.

20

140. Defendants thereby breached the security agreement the parties executed alongside Loan 1.

141. As a result of these breaches, Blue Rock suffered damage in the form of lost revenue, excess interest paid, and excess monies being drawn from Blue Rock's credit card revenues.

**WHEREFORE**, Blue Rock demands judgment against Defendants for the following relief:

    a. Compensatory damages;

    b. Attorney's fees, interest and costs;

    c. Such other and further relief as the court deems just and equitable.

## JURY DEMAND

The Plaintiffs hereby demand a trial by jury as to all issues contained herein.

## DESIGNATION OF TRIAL COUNSEL

SEAN F. BYRNES is hereby designated as trial counsel, pursuant to Rule 4:25-4.

## RULE 4:5-1 CERTIFICATION

I certify that at this time, upon information and belief, this matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding and that no other action or arbitration proceeding is contemplated. I presently do not know of any other party who should be joined in this action.

BYRNES O'HERN & HEUGLE, LLC
Attorneys for Plaintiff

Dated: March 29, 2021                    _s/Sean F. Byrnes_____

# EXHIBIT 2

MON-L-001124-21   03/31/2021 9:41:21 AM   Pg 1 of 1 Trans ID: LCV2021838774

# Civil Case Information Statement

### Case Details: MONMOUTH | Civil Part Docket# L-001124-21

**Case Caption:** WAGNER HOLDING CORP. DBA VS INVISION FUNDING, L

**Case Initiation Date:** 03/31/2021

**Attorney Name:** SEAN FRANCIS BYRNES

**Firm Name:** BYRNES O'HERN & HEUGLE, LLC

**Address:** 28 LEROY PLACE

RED BANK NJ 07701

**Phone:** 7322197711

**Name of Party:** PLAINTIFF : Wagner Holding Corp. dba

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Wagner Holding Corp. dba ?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category:** Putative Class Action? NO  Title 59? NO  Consumer Fraud? YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/31/2021
Dated

/s/ SEAN FRANCIS BYRNES
Signed

MON L 001124-21  04/01/2021 4:25:05 AM  Pg 1 of 1 Trans ID: LCV2021857679

```
MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1270
FREEHOLD          NJ 07728
                                       TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (732) 358-8700
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:   MARCH 31, 2021
                    RE:     WAGNER HOLDING CORP.  DBA  VS INVISION FUNDING, L
                    DOCKET: MON L -001124 21


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.


     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE PRETRIAL JUDGE ASSIGNED IS:  HON OWEN C. MCCARTHY


     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     003
AT:  (732) 358-8700 EXT 87871.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: SEAN F. BYRNES
                              BYRNES O'HERN & HEUGLE, LLC
                              28 LEROY PLACE
                              RED BANK          NJ 07701


JUNSKU0
```

**SUPERIOR COURT OF NEW JERSEY - eCOURTS**

The following was filed by BYRNES, SEAN FRANCIS on 03/31/2021 at 9:41 AM:

| | |
|---|---|
| Plaintiff Name: | WAGNER HOLDING CORP. DBA |
| Defendant Name: | INVISION FUNDING, LLC DBA ARCA, KAPITUS SERVICING, INC., JOHN DOES 1-10, ABC CORPS. 1-10 |
| Case Caption: | WAGNER HOLDING CORP. DBA VS INVISION FUNDING, L |
| Case Number: | MON-L-001124-21 |
| Docket Text: | Complaint with Jury Demand for MON-L-001124-21 submitted by BYRNES, SEAN FRANCIS, BYRNES O'HERN & HEUGLE, LLC on behalf of WAGNER HOLDING CORP. DBA against INVISION FUNDING, LLC DBA ARCA, KAPITUS SERVICING, INC., JOHN DOES 1-10, ABC CORPS. 1-10 |
| Transaction ID: | LCV2021838774 |

**Notice has been electronically mailed to:**

Plaintiff        SEAN FRANCIS BYRNES        SBYRNES@BYRNESOHERN.COM
                                                      ADICARLO@BYRNESOHERN.COM
                                                      JBOYLE@BYRNESOHERN.COM

**Notice was not electronically mailed to:**

| | |
|---|---|
| Defendant | INVISION FUNDING, LLC DBA ARCA |
| Defendant | KAPITUS SERVICING, INC. |
| Defendant | JOHN DOES 1-10 |
| Defendant | ABC CORPS. 1-10 |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey - Civil Part.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**SUPERIOR COURT OF NEW JERSEY - eCOURTS**

The following was filed by Case Management on 04/01/2021 at 4:25 AM:

| | |
|---|---|
| Plaintiff Name: | WAGNER HOLDING CORP. DBA |
| Defendant Name: | KAPITUS SERVICING, I NC., INVISION FUNDING, LL C DBA ARC A, ABC CORPS. 1-10, JOHN DOES 1-10 |
| Case Caption: | WAGNER HOLDING CORP. DBA VS INVISION FUNDING, L |
| Case Number: | MON L 001124-21 |
| Docket Text: | TRACK ASSIGNMENT |
| Transaction ID: | LCV2021857679 |

**Notice has been electronically mailed to:**

Plaintiff Attorney   SEAN F BYRNES          SBYRNES@BYRNESOHERN.COM
                                             ADICARLO@BYRNESOHERN.COM
                                             JBOYLE@BYRNESOHERN.COM

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant Attorney For | KAPITUS SERVICING, I NC. | 211 E. 7TH STREET, SUITE 620, AUSTIN, TX 78701 |
| Defendant Attorney For | INVISION FUNDING, LL C DBA ARC A | FUNDING, 2500 WILSON BOULEVARD, SUITE 350, ARLINGTON, VA 22201 |
| Defendant Attorney For | ABC CORPS. 1-10 | NJ 00000 |
| Defendant Attorney For | JOHN DOES 1-10 | NJ 00000 |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey - Civil Part.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

WAGNER HOLDING CORP. D/B/A THE BLUE ROCK CAFE

Plaintiff

20210401092118

Superior Court Of New Jersey

vs

MONMOUTH Venue

INVISION FUNDING, LLC D/B/A ARCA FUNDING, ET AL

Defendant

Docket Number: MON L 1124 21

**Person to be served** (Name and Address):
KAPITUS SERVICING, INC.
211 E. TH STREET  SUITE 620
AUSTIN  TX  78701
**By serving:** CORPORATION SERVICE COMPANY,
REGISTERED AGENT

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

**Attorney:** SEAN F. BYRNES, ESQ.
**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT NOTICE, CERTIFICATION

$ _____.____

**Service Data:**    [✓] Served Successfully        [ ] Not Served

Name of Person Served and relationship/title:

Date/Time:      April 1, 2021              2:15 PM

John Spidel, CSR

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[✓] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

**Description of Person Accepting Service:**

SEX: M   AGE: 40   HEIGHT: 6'0"     WEIGHT: 220     SKIN: White     HAIR: Black   OTHER: ---

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant

[ ] No response on:          Date/Time: _____
                            Date/Time: _____
                            Date/Time: _____

Other:

Kristi Wyatt
My Commission Expires
08/22/2024
ID No 129097546
NOTARY PUBLIC STATE OF TEXAS

**To Be Used Where Electronic Signature Not Available**
**Served Data:**
Subscribed and Sworn to me this

6th _____ day of April _____ , 20 21

Notary Signature: _Krisi Wyatt_

Kristi Wyatt                08/22/2024
Name of Notary        Commission Expiration

**Docusign Court Approved E-Signature**

I, Travis Wyatt _____ ,
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

_____        04 / 06 /2021
Signature of Process Server            Date

Name of Private Server: _____    Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952

# AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| **State of New Jersey** | **County of Monmouth** | **Superior Court** |

Case Number: MON L 1124 21

Plaintiff:
**WAGNER HOLDING CORP. D/B/A THE BLUE ROCK CAFE**

vs.

Defendant:
**INVISION FUNDING, LLC D/B/A ARCA FUNDING, ET AL**

For:
SEAN BYRNES

Received by Guaranteed Subpoena Service, Inc. to be served on **INVISION FUNDING, LLC DBA ARCA FUNDIN, 2500 WILSON BOULEVARD, SUITE 350, ARLINGTON, VA 22201**.

I, Kevin Brillianda, being duly sworn, depose and say that on the **2nd day of April, 2021** at **2:53 pm, I:**

Served SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT NOTICE, CERTIFICATION personally to Deniz Ulusan as Paralegal of INVISION FUNDING, LLC DBA ARCA FUNDIN. Service occurred at 2500 WILSON BOULEVARD, SUITE 350, ARLINGTON, VA 22201.

**Description** of Person Served: Age: 30, Sex: M, Race/Skin Color: White, Height: 5'7", Weight: 160, Hair: Black, Glasses: N

I am a natural person over the age of eighteen and am not a party to or otherwise interested in the subject matter in controversy. I am a private process server authorized to serve this process in accordance with relevant law. Under penalty of perjury, I declare that the foregoing is true and correct.

Subscribed and sworn to in my state and county by the affiant who is personally known to me.

_____
NOTARY PUBLIC

Date: ___4/8/21___

**Kevin Brillianda**

**Guaranteed Subpoena Service, Inc.**
**2009 Morris Ave**
**Union, NJ 07083**
**(800) 672-1952**

Our Job Serial Number: GTS-0000061275
Ref: 20210401092347

*(Notary seal: STEPHANIE HSU, COMMONWEALTH, REGISTRATION NO. 7893102, MY COMM. EXPIRES 01/31/2024, NOTARY PUBLIC OF VIRGINIA)*

Copyright © 1992-2021 Database Services, Inc. • Process Server's Toolbox V8.2a



# EXHIBIT 3

## Case Summary

**Case Number:** MON L-001124-21

**Case Caption:** Wagner Holding Corp. Dba Vs Invision Funding, L

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Monmouth | **Case Initiation Date:** 03/31/2021 |
| **Case Type:** Contract/Commercial Transaction | **Case Status:** Active | **Jury Demand:** 6 Jurors |
| **Case Track:** 2 | **Judge:** Owen C Mccarthy | **Team:** 3 |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** | **Case Disposition:** Open | **Statewide Lien:** |

### Plaintiffs
### Wagner Holding Corp.Dba

| | | |
|---|---|---|
| **Party Description:** Business | | **Attorney Name:** Sean Francis Byrnes |
| **Address Line 1:** The Blue Rock Cafe | **Address Line 2:** 522 Amboy Road | **Attorney Bar ID:** 032921992 |
| **City:** Keyport   **State:** NJ | **Zip:** 07735 | **Phone:** |
| **Attorney Email:** SBYRNES@BYRNESOHERN.COM | | |

### Defendants
### Kapitus Servicing, Inc.

| | | |
|---|---|---|
| **Party Description:** Business | | **Attorney Name:** |
| **Address Line 1:** 211 E. 7Th Street | **Address Line 2:** Suite 620 | **Attorney Bar ID:** |
| **City:** Austin   **State:** TX | **Zip:** 78701 | **Phone:** |
| **Attorney Email:** | | |

### Invision Funding, Llc Dba Arca

| | | |
|---|---|---|
| **Party Description:** Business | | **Attorney Name:** |
| **Address Line 1:** Funding | **Address Line 2:** 2500 Wilson Boulevard, Suite 350 | **Attorney Bar ID:** |
| **City:** Arlington   **State:** VA | **Zip:** 22201 | **Phone:** |
| **Attorney Email:** | | |

### Abc Corps. 1-10

| | | |
|---|---|---|
| **Party Description:** Fictitious | | **Attorney Name:** |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** |
| **City:**   **State:** NJ | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | |

### John Does 1-10

| | | |
|---|---|---|
| **Party Description:** Fictitious | | **Attorney Name:** |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** |
| **City:**   **State:** NJ | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | |

### Case Actions

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 03/31/2021 | Complaint with Jury Demand for MON-L-001124-21 submitted by BYRNES, SEAN FRANCIS, BYRNES O'HERN & HEUGLE, LLC on behalf of WAGNER HOLDING CORP. DBA against INVISION FUNDING, LLC DBA ARCA, KAPITUS SERVICING, INC., JOHN DOES 1-10, ABC CORPS. 1-10 | LCV2021838774 | 03/31/2021 |
| 04/01/2021 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV2021857679 | 04/01/2021 |
| 04/19/2021 | AFFIDAVIT OF SERVICE submitted by BYRNES, SEAN, FRANCIS of BYRNES O'HERN & HEUGLE, LLC on behalf of WAGNER HOLDING CORP.DBA against KAPITUS SERVICING, INC. | LCV2021998245 | 04/19/2021 |
| 04/21/2021 | AFFIDAVIT OF SERVICE submitted by BYRNES, SEAN, FRANCIS of BYRNES O'HERN & HEUGLE, LLC on behalf of WAGNER HOLDING CORP.DBA against INVISION FUNDING, LLC DBA ARCA | LCV20211020006 | 04/21/2021 |